# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-00147-COA

MARIO RUCKER A/K/A MARIO TERRELL                    APPELLANT
RUCKER

v.

STATE OF MISSISSIPPI                                 APPELLEE

DATE OF JUDGMENT:           01/12/2015
TRIAL JUDGE:                HON. JEFF WEILL SR.
COURT FROM WHICH APPEALED:  HINDS COUNTY CIRCUIT COURT, FIRST
                            JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:     OFFICE OF STATE PUBLIC DEFENDER
                            BY: JUSTIN TAYLOR COOK
ATTORNEY FOR APPELLEE:      OFFICE OF THE ATTORNEY GENERAL
                            BY: LISA L. BLOUNT
DISTRICT ATTORNEY:          ROBERT SHULER SMITH
NATURE OF THE CASE:         CRIMINAL - FELONY
TRIAL COURT DISPOSITION:    CONVICTED OF AGGRAVATED ASSAULT
                            AND SENTENCED AS A HABITUAL
                            OFFENDER TO LIFE WITHOUT PAROLE
                            IN THE CUSTODY OF THE MISSISSIPPI
                            DEPARTMENT OF CORRECTIONS
DISPOSITION:                AFFIRMED - 06/21/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE LEE, C.J., CARLTON AND FAIR, JJ.**

**LEE, C.J., FOR THE COURT:**

## PROCEDURAL HISTORY

¶1.     Mario Rucker was convicted of aggravated assault and sentenced as a habitual

offender to life without parole in the custody of the Mississippi Department of Corrections.

Rucker filed posttrial motions, which the trial court denied. Rucker now appeals, asserting that the trial court erred in sua sponte instructing the jury on aggravated assault.

## FACTS

¶2. On September 28, 2012, Rucker admittedly stabbed William Nuby several times with a pair of scissors. The incident occurred at a Waffle House in Jackson, Mississippi. A Waffle House employee testified that he saw Rucker with the scissors prior to the stabbing. The employee asked Rucker why Rucker had the scissors, and Rucker responded, "I'm a use 'em." Approximately forty minutes later, this same employee saw Rucker stab Nuby numerous times.

¶3. Rucker testified he stabbed Nuby after the two argued and Nuby "jumped at" him. Rucker stated that Nuby had been following him around that day and pestering him. Rucker said Nuby had accused him of wanting to have an affair with Nuby's wife.

¶4. Nuby was transported to the hospital, where he died approximately two days later. The State's forensic pathologist concluded that Nuby died from sharp-force injuries. Nuby had five wounds to his left shoulder and upper-back area. Rucker's medical expert concluded that Nuby died due to an accident at the hospital, not from the stab wounds.

## STANDARD OF REVIEW

¶5. A criminal defendant is entitled to jury instructions that present his theory of the case even if the supporting evidence "is weak, inconsistent, or of doubtful credibility." *Banyard v. State*, 47 So. 3d 676, 682 (¶17) (Miss. 2010) (quoting *Ellis v. State*, 778 So. 2d 114, 118 (¶15) (Miss. 2000)). But this right is not absolute. "[T]he court may refuse an instruction

which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence." *Harris v. State*, 861 So. 2d 1003, 1012-13 (¶18) (Miss. 2003) (quoting *Austin v. State*, 784 So. 2d 186, 192 (¶18) (Miss. 2001)); *see also Brown v. State*, 39 So. 3d 890, 898 (¶27) (Miss. 2010). "[T]his Court reads the instructions together as a whole." *McKlemurry v. State*, 947 So. 2d 987, 990 (¶3) (Miss. Ct. App. 2006). "No reversible error will be found to exist if, when read together, the instructions correctly state the law and effectuate no injustice." *Id*.

## DISCUSSION

¶6. In his only issue on appeal, Rucker argues that the trial court committed reversible error when it sua sponte instructed the jury on aggravated assault.[1] However, the record indicates the trial court did not sua sponte instruct the jury on aggravated assault. Initially, Rucker submitted instruction D-7, which instructed the jury on murder, manslaughter, aggravated assault, and simple assault. Rucker also submitted separate instructions on self-defense, simple assault, and accident and misfortune. The State objected to Rucker's inclusion of aggravated assault. Rucker then argued the following:

> A reasonable jury could find that there was no nexus between the death and the stab wound, but that the stab wound was aggravated assault. There's been plenty of evidence that would support an aggravated assault verdict. And we would stand by the verdict as to the necessity of an inclusion of an

---

[1] After filing his appeal to this Court, Rucker filed a petition for a writ of habeas corpus and a petition for a writ of mandamus in the trial court. The trial court dismissed Rucker's petition, finding that Rucker was not entitled to relief since his direct appeal was pending. The trial court also noted that Rucker's petition raised issues that were the subject of his direct appeal. Rucker then filed a supplemental brief with this Court arguing that the trial court should not have dismissed his petitions. In his supplemental brief, Rucker raises the same issue as in his initial brief.

[aggravated] assault instruction. . . . And we believe that a reasonable jury could come back under the facts and circumstances of this case and the intervening acts that took place, [and find] that it was in fact aggravated assault and not murder.

The trial court then directed Rucker to provide an instruction that included the elements of aggravated assault. The trial court indicated it would take the matter under advisement. Rucker indicated the State was providing "the step down [instruction] from murder to second degree to manslaughter. We will pick up from there with [aggravated] assault for the court to consider." Rucker then withdrew D-7 in order to make the changes. Ultimately, Rucker submitted instruction D-7D, which instructed the jury on manslaughter and aggravated assault. Instruction D-7D was given to the jury. The trial court also provided instruction C-10, which instructed the jury on the elements of aggravated assault, and C-12, which was a form-of-the-verdict instruction for murder, depraved-heart murder, manslaughter, aggravated assault, and simple assault. Although the trial court did provide C-10, we would hardly describe this action as sua sponte due to the in-depth conversation concerning an aggravated-assault instruction between the trial court, the State, and Rucker. Ultimately, Rucker requested an instruction regarding aggravated assault. Thus, he waived any objection to the jury being instructed as such. *See Moore v. State*, 799 So. 2d 89, 91-92 (¶¶9-11) (Miss. 2001).

¶7. Rucker cites to *Hye v. State*, 162 So. 3d 750, 751 (¶2) (Miss. 2015), for the proposition that "a criminal defendant no longer has the unilateral right under Mississippi law to insist upon an instruction for lesser-related offenses which are not necessarily included

4

in the charged offenses." However, Rucker's trial occurred in 2014, well before *Hye* became law; thus, we find *Hye* inapplicable to this case.

¶8.     **THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT, OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE AS A HABITUAL OFFENDER OF LIFE WITHOUT PAROLE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.**

        **IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, JAMES, WILSON AND GREENLEE, JJ., CONCUR.**