Louis A. Gily & Sons, et al. *v.* Dependents of Shankle

No. 42553          February 4, 1963          149 So. 2d 480

*Cox, Dunn & Clark,* Jackson, for appellants.

*J. A. Travis, Jr.,* Jackson; *Charles C. Finch,* Batesville, for appellees.

ETHRIDGE, J.

In this workmen's compensation case, the question is whether the Workmen's Compensation Commission was warranted in finding that the deceased worker was an employee, rather than a servant of an independent contractor.

Louis A. Gily & Sons, Inc. (called Gily) entered into a contract with the State Building Commission to do general contract work on a women's dormitory at the University of Mississippi. Gily agreed to furnish all the materials according to plans and specifications, and to make a dirt fill, in order to erect the building.

Several days before the fatal accident, Gily entered into a verbal contract with O'Neal, who was to furnish a dragline and to load 25,000 yards of dirt for Gily on trucks owned and provided by Gily. Gily was to furnish the land and the dirt to be dug by the dragline and loaded on the trucks. O'Neal was to provide a dragline operator to load Gily's trucks with the dirt, at 15¢ per cubic yard. Gily would pay O'Neal "upon the monthly estimates of and out of the monthly payments from the Mississippi State Building Commission."

O'Neal hired Kenneth Shankle, the deceased employee, to operate the dragline. The land from which the dirt was to be removed was approximately one and one-half miles west of Oxford and the University. Several weeks

after Shankle's death this oral contract was reduced to writing. O'Neal agreed with Gily that he would pay a certain wage scale and make reports to Gily of the hours his men worked. Eugene Gily, an officer of the company, went with O'Neal to the location, showed him where to dig, told him he wanted to start right away, and instructed him to cut the lot down to a level. Gily had the power to move O'Neal's dragline operations from one spot to another, and exercised that power on several occasions to obtain dirt with more clay in it. Gily reserved the authority to instruct O'Neal when he could and could not work, and how many hours a day to do so.

O'Neal made arrangements with Carter to move his dragline to the job site. He hired Shankle to operate it, and, on the day in question, McKenzie, an employee of Carter, Shankle, and another employee of O'Neal, Robinson, loaded the dragline on Carter's truck, which transported it to the location. Gily previously had cleared the land where the dirt was to be dug and loaded. After the dragline was removed from the truck, and on the location of the job, Robinson was driving it late that afternoon, when it was almost dark. Shankle started to place a pipe into the metal tracks to keep them from slipping, when he was electrocuted, either by the boom of the dragline coming in contact with an overhead electric line, or the electricity arcing from the line to the boom and into Shankle.

It is undisputed that Shankle's death arose out of and in the course of his employment. O'Neal considered that he was performing the Gily contract at the time Shankle was killed; that Shankle's work was necessary for performance of the contract and was a part of it; and he later reported to Gily 3-4 hours of work for Shankle on this occasion.

The Commission found that Gily exercised material controls over O'Neal under the contract. Considering

especially the facts that Gily set the pay scale, directed the time of work, secured the job site, could have the dragline moved from place to place, and directed the time and method of payment, it held that O'Neal was not an independent contractor.

After finding all of these elements of control by Gily over O'Neal, and determining that he was not an independent contractor, but an employee, the Commission nevertheless awarded compensation on a theory which we do not need to consider, namely, that O'Neal was a sub-contractor of Gily, and Shankle was covered as a statutory employee. Miss. Code 1942, Rec., Sec. 6998-04. Since the Commission reached the right result and found the necessary facts, we do not decide whether O'Neal was a statutory employee.

(Hn 1) The great weight of the evidence, in accord with the findings of the Commission, shows that O'Neal was not an independent contractor, but was an employee of Gily, and therefore Shankle was also an employee of Gily. (Hn 2) The traditional test of the employer-employee relation is the right of the employer to control the details of the work. 1 Larson, Workmen's Compensation Law, Sec. 44 *et seq.* The right of control and the overt exercise of that right by Gily, over both O'Neal and Shankle, reflects the existence of a relationship of employer and employee.

(Hn 3) Where one engages another to perform certain work, retaining control of the conduct of that person thus engaged with respect to the work to be done, and the order, method, and plan of the work, the relation is that of master and servant, and not of employer and independent contractor. The criteria in a workmen's compensation case were fully reviewed in Wade v. Traxler Gravel Co., 232 Miss. 592, 100 So. 2d 103 (1958). To the same effect are Bush v. Dependents of Byrd, 234 Miss. 782, 108 So. 2d 211 (1959), and Mullins & Parker v. Rucker, 237 Miss. 330, 114 So. 2d 761 (1959).

The present facts fall within these criteria and decisions. Hence the order of the Commission awarding compensation and the judgment of the circuit court should be affirmed.

Affirmed.

*Lee, P. J., and Arrington, McElroy, and Gillespie, JJ.,* concur.